## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **RAZBERI TECHNOLOGIES, INC., a Delaware corporation**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**DYNACOLOR, INC., a foreign corporation, and DYNACOLOR USA, INC, a corporation with its principal place of business in California**<br><br>    **Defendants.** | **CASE NO.** _____<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff Razberi Technologies, Inc. ("Razberi"), by and through its attorneys at Vinson & Elkins LLP, complains and alleges against DynaColor, Inc. ("DynaColor"), and DynaColor USA, Inc. (collectively, "Defendants") as follows:

### The Parties

1.      Razberi is, and at all times relevant herein was, a corporation incorporated in Delaware, with a principal place of business at 13755 Hutton Drive, Suite 500 Farmers Branch, Texas 75234.

2.      Razberi is a leading developer and manufacturer of networked digital video solutions for professional video surveillance and security applications. Razberi is known for its plug-and-play network video recorders ("NVRs"), which are designed for use with a Windows-based software platform for recording networked digital surveillance in a wide range of industries, including energy, oil and gas, retail, and finance.

3.      Razberi is informed and believes, and thereon alleges, that at all times relevant Defendant DynaColor is registered as a Taiwanese corporation, with a principal place of

business at No, 116, Jou Tz Street, Neihu, Taipei 114, Taiwan.  DynaColor can be served via personal service at its place of business in Taiwan or via Letters Rogatory issued by the US District Court and served via the Taiwanese court system.  DynaColor has regularly conducted business in the Northern District of Texas, including entering into an Assignment Agreement, which it agreed is to be governed by Texas Law, under which it assigned its rights in certain assets and rights to Razberi.

4.      Razberi is informed and believes, and thereon alleges, that at all times relevant Defendant DynaColor USA, Inc. is a subsidiary of DynaColor, with a principal place of business at Irvine Business Park, Suite 108, 9272 Jeronimo Road, Irvine, CA 92618. DynaColor USA has regularly conducted business in the Northern District of Texas, including entering into a providing warranty and repair services to Razberi pursuant to DynaColor's agreements with Razberi.

## JURISDICTION AND VENUE
## SUBJECT MATTER JURISDICTION

5.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367 because Razberi asserts a cause of action under federal law under the Defend Trade Secrets Act ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376, which passed into law on May 11, 2016.  The DTSA amended chapter 90 of the Title 18 of the U.S. Code (the Economic Espionage Act of 1996) to provide federal jurisdiction for the theft and misappropriation of trade secrets.  *See* 18 U.S.C. §§ 1831, et seq. (as amended).

6.      This Court has supplemental jurisdiction over Razberi's state law claims under 28 U.S.C. § 1367(a).

7.      Razberi has a principal place of business in Texas, and thus is a citizen of Texas.

8.      Defendant DynaColor is not a citizen of Texas because it has its principal place of business in Taiwan.

9.      Defendant DynaColor USA is not a citizen of Texas because it has its principal place of business in California.

PLAINTIFF'S ORIGINAL COMPLAINT                                                              2

10.     Therefore, this Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Plaintiff and Defendants, who are citizens of different states; and more than $75,000, exclusive of interest and costs, is at stake.

11.     Razberi in this action seeks monetary relief over $75,000.00, exclusive of interest and costs.

## PERSONAL JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over each of the Defendants. Each of the Defendants, upon information and belief, has conducted business in, and has had continuous and systematic contacts with, the State of Texas and the United States of America. By way of example and, without limitation:

a.  DynaColor:

i.   invested in Razberi, located in Northern District of Texas;

ii.   negotiated and executed a Memorandum of Understanding ("MOU") with Texas-based NetVideo Consulting, Inc., located in the Northern District of Texas, regarding the creation of Razberi, located in the Northern District of Texas;

iii.   negotiated and executed an Asset Purchase Agreement with Texas-based GVI Security Video management Solutions, LLC, and GVI Security, Inc. ("collectively GVI"), both located in the Northern District of Texas, by which DynaColor and Texas-based NetVideo Consulting jointly purchased assets from GVI that were later assigned to Razberi and are the subject of this litigation;

iv.   negotiated and executed an Assignment Agreement with Texas-based Razberi, which Assignment Agreement is subject of this litigation and which Assignment Agreement DynaColor has breached;

v.   executed as a guarantor an OEM Agreement on behalf of Texas-based Razberi, located in the Northern District of Texas;

vi.     committed actions in the Northern  District of Texas and elsewhere that amounted to tortious interference with Razberi's advantageous contractual relationships, thus injuring Razberi, located in the Northern District of Texas; and

vii.     improperly acquired, and made unauthorized use and disclosure confidential and trade secret information owned by Razberi, which actions are the subject of Razberi's claims in this action.

b.  DynaColor USA:

i.     provided warranty service and repair to entities in Texas and the Northern District of Texas, including Razberi, which is located in the Northern District of Texas;

ii.     committed actions in the Northern  District of Texas and elsewhere that amounted to tortious interference with Razberi's advantageous contractual relationships, thus injuring Razberi, located in the Northern District of Texas; and

iii.     used and disclosed confidential and trade secret information owned by Razberi without authorization, which actions are the subject of Razberi's claims in this action.

13.     Alternatively, the Defendants have had systematic, continuous, and substantial contacts with the United States as a whole such that federal jurisdiction is appropriate under Fed. R. Civ. P. 4(k)(2).

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and Defendants have sufficient contacts with this Federal Judicial District such that Defendants may be found here.

15.     Venue is also proper in this Court because Defendants have specifically agreed to the exclusive jurisdiction of the state and federal courts located within Dallas County with

respect to all claims brought under the Assignment Agreement that is the subject of this action, and which Defendants have breached.

16.     As used herein, allegations against DynaColor include allegations against DynaColor USA, unless specifically excepted.

## BACKGROUND

17.     In 2011-2012, Thomas J. Galvin launched Razberi Technologies based on technology he had invented and developed for, and then acquired from, GVI Security.  Razberi is a privately-held company founded and managed by veteran security experts and innovators. Razberi develops and manufactures intelligent network appliances for physical security. Razberi's flagship Intelligent Surveillance Appliance, the Razberi™ ServerSwitch™ is a superior, open alternative to general purpose systems and Network Video Recorders (NVRs). The Razberi™ ServerSwitch™ replaces the traditional server, storage devices, network switch, and camera power supplies with a single appliance designed for IP video recording and management.  Razberi's products are ground-breaking solutions to the complexity of network video, providing both ease-of-use and simplicity of install.

18.     Security leaders rely on Razberi for unmatched reliability, visibility over the physical security ecosystem down to the camera, protection from cyber security threats, and to future-proof security investment through smart scalability. Razberi solutions are available through a worldwide network of value added partners. The company designs and manufactures its products in the Dallas, Texas area.

## Razberi is Launched for the Purpose of Developing and Selling NVR Products Based on Intellectual Property Jointly Acquired and Transferred by Galvin and DynaColor

19.     To launch Razberi, Galvin partnered his new company with DynaColor, a publicly traded Taiwan-based OEM manufacturer of video surveillance products.  DynaColor, through is majority owner and president, Warren Chen, became Razberi's lead investor and majority owner.   As part of its investment, DynaColor had the right to appoint a director on

Razberi's board of directors.  DynaColor appointed its own president, Chen, to be a director on Razberi's board of directors.  Razberi's by-laws identified only two directors, and Chen was one of them.

20.    The specific timeline for the launch of Razberi is important to understand the parties' intentions.  Galvin first met Chen around 2009, when Galvin was the Product Manager for GVI Security. At that time, GVI Security distributed commercial surveillance cameras, and DynaColor was one of its suppliers. One GVI entity, GVI Security Video Management Solutions, LLC ("GVI VMS"), entered into an Independent Contractor Services Agreement with a company called Right Hand Technologies, Inc. ("Right Hand Technologies"), under which Right Hand Technologies designed and developed an NVR for GVI VMS.

21.    In 2011,  Galvin approached Chen in an effort to secure financing for a new venture, NetVideo Consulting, a predecessor company to Razberi.  On September 6, 2011, NetVideo Consulting executed an NDA with DynaColor to discuss trade secret information and contemplate a joint venture using the trade secrets and other intellectual property from GVI Security, which was not thriving at the time.  DynaColor specifically promised not to use or disclose, or reverse engineer, any confidential information acquired or learned from NetVideo Consulting under the NDA.

22.    Later that same month, on September 22, 2011, DynaColor and NetVideo Consulting entered into a Memorandum of Understanding (the "MOU") under which the parties agreed to jointly acquire intellectual property from GVI Security, including intellectual property related to the NVR designed by Right Hand Technologies for GVI VMS, and create a joint venture to be named "Razberi Technologies" to commercialize and market the intellectual property from GVI Security.  Both parties understood that DynaColor would function solely as Razberi's OEM partner to manufacture the component parts to Razberi's NVR products.

23.    One week later, on September 27, 2011, DynaColor and NetVideo Consulting executed an Asset Purchase Agreement with GVI Security to jointly acquire assets and intellectual property from GVI and Right Hand Technologies, just as envisioned in the MOU.

24.     In March of 2012, after Razberi Technologies was jointly formed and owned by DynaColor and NetVideo Consulting., DynaColor and NetVideo Consulting executed an Assignment Agreement through which DynaColor purportedly transferred "all assets and rights" acquired from GVI Security to Razberi.   Indeed, the Assignment Agreement confirmed that it was both parties' intent for Razberi Technologies to develop and exploit all of the assets and rights acquired from GVI Security.   In the Assignment Agreement, DynaColor assigned "all of DynaColor's rights, title and interests in and to the Purchased Rights & Assets free and clear of any and all liabilities, claims, liens security interests and judgments of any kind." Under the Assignment Agreement, DynaColor retained no rights to the intellectual property acquired from GVI Securities.

25.     Under this Assignment Agreement, DynaColor agreed to the exclusive jurisdiction of the state and federal courts within Dallas County, Texas for all claims brought under the Assignment Agreement.

26.     Rather than having Right Hand Technologies manufacture Razberi's products, Chen convinced Galvin to move all engineering and design to DynaColor's Taiwan facility, supposedly to provide cost efficiencies in designing, developing and exploiting the intellectual property assets acquired from GVI Security.   To do so, Razberi transferred significant confidential and trade secret information, including designs, component parts, BOM, specifications, drawings, and other materials and information sufficient for DynaColor to manufacture (as an OEM partner) Razberi's NVR products for Razberi.   As the relationship developed, the components for Razberi's products were manufactured by DynaColor in Taiwan, and then shipped to Razberi's facility in Texas, where Razberi provided end manufacturing and assembly to finalize the product for delivery to customers.

27.     DynaColor used the information from Razberi to manufacture components for Razberi, which components were sold and shipped to Razberi in the United States, and which were then assembled and sold by Razberi.   In addition, DynaColor and DynaColor USA provided technical support, training, repair services though a structured Return Merchandise

Authorization ("RMA") process, and supplied datasheets and technical information for branding and distribution by Razberi.

28.     During Razberi and DynaColor's early partnership, Galvin requested many times for the parties' relationship to be further memorialized in written agreements setting forth the parties' respective rights and obligations.  Based on DynaColor's majority ownership position and Chen's role as a Director of Razberi, Chen forced Galvin and Razberi to continue forward without any written agreement, saying simply that Galvin and Chen should trust each other. Indeed, emails from Chen to Galvin specifically insisted that for Razberi to succeed, the parties must have "sufficient collaboration between both partners."  And, further that, "sufficient collaboration would require mutual trust."  Chen noted that "without the base of mutual trust, it will generate suspicion and deteriorate efficiency of collaboration and eventually hurt [Razberi]."  With these emails and Chen's assurances, Galvin agreed to go forward with the Razberi joint venture without a written joint venture agreement.  Based on Chen's promises and DynaColor's assurances, DynaColor committed to acting in Razberi's best interest.

29.     The product that DynaColor and Razberi initially built based on the intellectual property acquired from GVI Security is called the M-Series.  In late 2012, based on the designs of the M-Series, DynaColor developed a derivative NVR product, the A-Series, which provided some additional  cost-saving efficiencies and additional I/O ports, but had the same design and footprint at the M Series..  In June of 2013, Razberi began selling the A-Series NVR, using DynaColor as the OEM of component parts for the product.

### DynaColor Offers Razberi's Products to Razberi Competitors and Customers Without Authorization and Behind Razberi's Back

30.     In December of 2013, Razberi learned that DynaColor had perhaps offered to sell the A-series NVR to a competitor of Razberi, Sentry360.  Based on this suspicion, in February of 2014, Galvin visited Chen in Taiwan and personally confronted Chen with Galvin's suspicions about Sentry360.   Chen did not deny that DynaColor offered to sell A-series NVR

products to Sentry360.  Galvin indicated that these unauthorized sales were contrary to the parties' contracts and the spirit of the partnership, and threatened to bring legal action.  Chen stated that Razberi could sue if it wanted, but reminded Galvin that DynaColor still owned a majority share of Razberi and, regardless, DynaColor would pull all of its support and OEM work from Razberi if Razberi did sue, leaving Razberi with no support or OEM partner.  After much discussion between Chen and Galvin in which Galvin emphasized that DynaColor would be causing harm to Razberi and confusion in the marketplace in the channels into which Razberi sold, Chen agreed that DynaColor would not sell the A-series to Sentry360.  By information and belief, however, Sentry360 is still marketing the A-series products.

### Razberi Wins Key Business from Avigilon

31.     In March of 2014, Razberi won the business and entered into a very important OEM Agreement with Avigilon Corporation.  Because of DynaColor's status as a publicly traded Taiwanese company and due to the significant amount of product that Avigilon intended to purchase from Razberi, DynaColor also signed the Avigilon OEM agreement as a "guarantor" to guarantee supply of product only if Razberi could not meet Avigilon's order requirements.  Razberi's business with Avigilon was significant, generating roughly $1M in revenues each month for Razberi.

32.     In May of 2014, Avigilon met with Razberi to discuss Razberi's supply chain, and DynaColor was disclosed as Razberi's OEM Partner.  Avigilon requested to purchase directly from DynaColor and pay Razberi a royalty.  Razberi, however, declined the offer as the owner of all intellectual property regarding these NVR products.

33.     In November of 2014, Razberi brought on additional investors, which meant that DynaColor and Chen no longer had majority control of Razberi.  Chen remained as a director of Razberi.

**DynaColor Secretly Takes Razberi's Business with Avigilon**

34.     In March of 2015, after several months of significant orders from Razberi, Avigilon's orders and forecasts to Razberi for NVR product abruptly stopped.  Razberi attempted to contact Avigilon on several occasions to understand why Avigilon had so abruptly stopped buying products from Razberi, but Avigilon avoided all such contact.  Nevertheless, Avigilon continued to sell Razberi's NVR products in the marketplace.

35.     Razberi contacted DynaColor and Chen to ask if they had any understanding what happened to the Avigilon business, and DynaColor and Chen denied knowing anything. Subsequently, Razberi specifically asked DynaColor and Chen if they were manufacturing products for Avigilon as an OEM, but DynaColor and Chen through written communications denied providing products directly or indirectly to Avigilon.

36.     After allowing time to pass for Razberi's products to flow through and out of Avigilon's inventory, Razberi obtained Avigilon's NVR appliance in August of 2015.   Upon inspection, it was clear that Avigilon's NVR appliance was a clone of Razberi's NVR appliance, but was not assembled in Razberi's facility.  The part numbers on the printed circuit boards were identical to the part numbers that DynaColor manufactured for Razberi.   Also, the MAC IDs for the product were registered to DynaColor.   The unit design and materials used reflected exactly what DynaColor would ship to Razberi to be assembled.  Therefore, it was clear that Chen and DynaColor had misappropriated Razberi's intellectual property, and used Chen's position as a Razberi director and DynaColor's position as Razberi's OEM partner, to take Avigilon's business away from Razberi.  Worse yet, DynaColor had denied its actions when directly asked by Razberi.

37.     Additional channel confusion continued, and based on information and belief, DynaColor has taken additional Razberi potential and existing business by selling clone products that directly compete with Razberi to Sentry360 and other Razberi competitors/customers.

38.     In February of 2016, Galvin traveled to Taiwan to meet with Chen in person. Galvin took the evidence showing that DynaColor was providing OEM product to Avigilon and had taken that business from Razberi.  Galvin reminded Chen of the fiduciary duties that Chen owed Razberi, that the Razberi designs were provided to DynaColor under an obligation of confidence and as Razberi's trusted OEM partner, and that DynaColor was prohibited from such conduct by its various contracts with Razberi.  Galvin confronted Chen in a face-to-face meeting with the direct evidence of DynaColor's wrong-doing.  Chen neither admitted nor denied the wrongdoing, simply shrugging his shoulders.  Galvin outlined terms for a resolution of DynaColor's wrongdoing, and Chen simply requested that Razberi's demands be set forth in writing.

39.     In response to Chen's request, counsel for Razberi sent a letter dated February 19, 2016, setting forth the basis for Razberi's claims as well as providing a proposal for resolution of Razberi's claims without the need for court intervention.  DynaColor refused to agree to Razberi's proposal, and the parties were unable to agree to any resolution that would rectify DynaColor's conduct.

40.      DynaColor continues to make, offer and sell its DynaGuard A Series, H Series (another new derivation using Razberi's intellectual property) and M Series NVRs.  Taking advantage of DynaColor's role as investor and majority owner, DynaColor exploited Razberi's intellectual property, used it for its own profit, and developed these clone products to intentionally target Razberi's existing and potential customers.

## Razberi is Entitled to Recover Reasonable Attorneys' Fees and Costs

41.     By letter dated September 22, 2016, pursuant to Texas CPRC §§ 38.001 et. Seq., Razberi provided notice of its breach of written contract claim and presented DynaColor with a claim for damages under its written contracts, as well as a courtesy copy of this Complaint. Because DynaColor has refused to pay the just amount of damages caused by DynaColor's breach, Razberi has been forced to retain counsel and pursue its legal remedies.

## FIRST CAUSE OF ACTION

### Breach of Contract (NDA)

42.     Razberi re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

43.     In September 2011, DynaColor and NetVideo Consulting, Inc. entered into a valid and enforceable contract titled "Mutual Nondisclosure Agreement" (the "NDA").  The rights and obligations of NetVideo Consulting, Inc. under the NDA were transferred to Razberi in an agreement entitled "Assignment Agreement," between NetVideo Consulting, Inc., DynaColor, and Razberi, which was executed in March of 2012 (the "Razberi Assignment Agreement)."

44.     DynaColor breached its NDA with Razberi in December of 2013 when it offered to sell NVR products based on intellectual property first shared and exchanged under the NDA. DynaColor continued to breach the NDA through its further manufacture and sales of NVR products based on this same intellectual property.

45.     Razberi has performed all of its obligations under the NDA and under the Assignment Agreement.

46.     As a direct and proximate result of DynaColor's breaches of the NDA, Razberi has incurred damages. Accordingly, Razberi is entitled to judgment against DynaColor for compensatory damages, reasonable and necessary attorneys' fees under at least Texas Civil Practice and Remedies Code § 38.001, judgment that Defendants' prior material breaches excuse Razberi from further performance under the NDA and Assignment Agreement, and such other and further relief to which Razberi is entitled at law or in equity.

## SECOND CAUSE OF ACTION

### Breach of Contract (Assignment Agreement)

47.     Razberi re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

48.     The Razberi Assignment Agreement is a valid and enforceable contract.

49.     Razberi has performed all of its obligations under the Razberi Assignment Agreement.

50.     Under the Razberi Assignment Agreement, DynaColor purported to irrevocably assign, sell, transfer and convey to Razberi DynaColor's rights, title and interests.  DynaColor breached the Razberi Assignment Agreement by failing to fully assign all of its rights, title and interests in assets and intellectual property acquired from GVI Security. Instead, however, DynaColor breached the Assignment Agreement by, among other things, using and disclosing these assets and intellectual property for its own purposes to develop and manufacture Windows-based NVR products and component parts to sell to parties other than Razberi.

51.     As a direct and proximate result of DynaColor's breaches of contract, Razberi has incurred damages.  In addition to other damages to be proven at trial, DynaColor's breach of contract has already caused Razberi lost profits in excess of $4.5M based only on lost sales to Avigilon, which damages continue to increase each month.   On information and belief, Razberi has suffered additional damages based on DynaColor's sales to other parties, including Sentry360.  Accordingly, Razberi is entitled to judgment against DynaColor for compensatory damages, reasonable and necessary attorneys' fees under at least Texas Civil Practice and Remedies Code § 38.001, judgment that Defendants' prior material breaches excuse Razberi from further performance under the Razberi Assignment Agreement, and such other and further relief as to which Razberi is entitled at law or in equity.

## THIRD CAUSE OF ACTION

### Misappropriation of Trade Secrets in Violation of the Texas Uniform Trade Secrets Act

52.     Razberi re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

53.     As set forth above, Razberi possesses and possessed certain trade secret information, including designs, component parts, BOM, specifications, drawings, and other materials and information sufficient for DynaColor to manufacture (as an OEM partner) Razberi's ServerSwitch.  This information constitutes "trade secrets" under Texas's Uniform

Trade Secrets Act, section 134A, *et seq.* Razberi has made reasonable efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information. To the extent Razberi failed to take any measures to protect and safeguard its trade secrets, such failures were a direct result of misrepresentations and false assurances from DynaColor. Further, Razberi's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons and entities. Razberi provided DynaColor its trade secrets for the limited purpose of providing OEM manufacturing services to Razberi.

54.    Under Section 134A.002, DynaColor has misappropriated Razberi's trade secrets by making unauthorized use and disclosure of Razberi's trade secrets to develop clone products and compete directly with Razberi, and supply Razberi's competitors the ability to improperly compete with Razberi. Further, DynaColor has misappropriated Razberi's trade secrets through acquisition by improper means. Under Section 134A.002, "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means. DynaColor made multiple misrepresentations to Razberi to obtain access to and possession of a number of Razberi trade secrets necessary to design and manufacture NVR products. Further, by retaining these trade secrets for its own use, rather than for the exclusive use of Razberi—the owner of the trade secrets—DynaColor also misappropriated Razberi's trade secrets.

55.    Defendants' intentional misuse and deception demonstrates that Chen and DynaColor will continue to use and disclose Razberi's trade secrets unless enjoined.

56.    Unless enjoined by this Court, said misappropriation of trade secrets, actual or threatened, will cause great and irreparable injury to Razberi, and Razberi has no adequate or other remedy at law for such acts and threatened acts. Razberi is entitled to preliminary and permanent injunctive relief under Section 134A.003

57.     Defendants' actions constitute both actual and threatened misappropriation of Razberi's trade secrets under Sections 134A.001-002.

58.     As a direct, proximate and foreseeable result of Defendants' misappropriation of trade secrets, actual or threatened, Razberi has been damaged in an amount not yet fully ascertained, but in any event Razberi has suffered damages in excess of $4.5M in lost profits caused by DynaColor.   Such lost profit damages continue to increase each month.   Razberi is entitled to such lost profit damages, as well as unjust enrichment, under Section 134.004. DynaColor has made sales in the United States and to U.S.-based customers of its A-series, M-Series, H-Series and other derivative products, and Razberi is entitled to unjust enrichment damages based on all such sales.

59.     Defendants' unlawful actions were willful and malicious, and made with the deliberate intent to injure Razberi's business, thereby entitling Razberi to exemplary damages and/or attorneys' fees to be proven at trial under Sections 134.004(b) and 134.005.

## FOURTH CAUSE OF ACTION

### Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act

60.     Razberi re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

61.     As set forth above, Razberi possesses and possessed certain trade secret information, including designs, component parts, BOM, specifications, drawings, and other materials and information sufficient for DynaColor to manufacture (as an OEM partner) Razberi's ServerSwitch.  This information constitutes "trade secrets" under the Defend Trade Secrets Act of 2016 ("DTSA").  Razberi has made reasonable efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information. To the extent Razberi failed to take any measures to protect and safeguard its trade secrets, such failures were a direct result of misrepresentations and false assurances from DynaColor. Further, Razberi's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons and entities.

Razberi provided DynaColor its trade secrets for the limited purpose of providing OEM manufacturing services to Razberi.

62.     Under the DTSA,  DynaColor has misappropriated Razberi's trade secrets by making unauthorized use and disclosure of Razberi's trade secrets to develop clone products and compete directly with Razberi, and supply Razberi's competitors the ability to improperly compete with Razberi.   Further, DynaColor has misappropriated Razberi's trade secrets through acquisition by improper means.  Under the DTSA, "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means.  DynaColor made multiple misrepresentations to Razberi to obtain access to and possession of a number of Razberi trade secrets necessary to design and manufacture NVR products.  Further, by retaining these trade secrets for its own use, rather than for the exclusive use of Razberi—the owner of the trade secrets—DynaColor also misappropriated Razberi's trade secrets.

63.     DynaColor's intentional misuse and deception demonstrates that Chen and DynaColor will continue to use and disclose Razberi's trade secrets unless enjoined.

64.     Unless enjoined by this Court, said misappropriation of trade secrets, actual or threatened, will cause great and irreparable injury to Razberi, and Razberi has no adequate or other remedy at law for such acts and threatened acts.  Razberi is entitled to preliminary and permanent injunctive relief under the DTSA.

65.     DynaColor's actions constitute both actual and threatened misappropriation of Razberi's trade secrets under the DTSA.

66.     As a direct, proximate and foreseeable result of DynaColor's misappropriation of trade secrets, actual or threatened, Razberi has been damaged in an amount not yet fully ascertained, but in any event Razberi has suffered damages in excess of $4.5M in lost profits caused by DynaColor.   Such lost profit damages continue to increase each month.    Razberi is entitled to such lost profit damages, as well as unjust enrichment, under the DTSA.

DynaColor has made sales in the United States and to U.S.-based customers of its A-series, M-Series, H-Series and other derivative products, and Razberi is entitled to unjust enrichment damages based on all such sales.

67.     Defendants' unlawful actions were willful and malicious, and made with the deliberate intent to injure Razberi's business, thereby entitling Razberi to exemplary damages and/or attorneys' fees to be proven at trial under Sections 134.004(b) and 134.005.

<u>FIFTH CAUSE OF ACTION</u>

**Breach of Covenant of Good Faith and Fair Dealing**

68.     Razberi re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

69.     Razberi and DynaColor enjoyed a special relationship with DynaColor as an investor, majority shareholder, and OEM partner of Razberi.  Because of this special relationship, the contractual agreements between the two parties perforce contain an implied covenant of good faith and fair dealing. It was DynaColor's stated intent that all assets and intellectual property from GVI Security would be acquired for the exclusive benefit of and use by Razberi Technologies, and once Razberi Technologies was formed, DynaColor would transfer all of its rights, title and interests to Razberi Technologies.   DynaColor requested that Razberi "trust" DynaColor to act in Razberi's best interest without the need of many formal agreements.

70.     DynaColor breached this covenant of good faith and fair dealing through its self-dealing by using intellectual property, assets, confidential information, and trade secrets of Razberi for its own benefit and to the detriment of Razberi.

71.     DynaColor has also violated the covenant of good faith and fair dealing by all of the foregoing, and also at least because Razberi has acted in bad faith by frustrating Razberi's rights to receive the benefits of the NDA and Razberi Assignment Agreement and by interfering with Razberi's relationships with its current and potential customers.

72.     DynaColor's breach of the covenant of good faith and fair dealing has caused significant harm to Razberi.   Such damages have not yet been completely ascertained, but in any event Razberi has suffered damages in excess of $4.5M, which damages continue to increase each month.

## SIXTH CAUSE OF ACTION

### Injunctive Relief

73.     Razberi re-alleges and incorporates by reference each and every allegation contained in the above paragraphs of this Complaint.

74.     Pursuant to Federal Rule of Civil Procedure 65, Razberi requests that this Court issue an injunction:

   a.  ordering DynaColor to return to Razberi all confidential, proprietary and trade secret information of Razberi within their possession, custody, or control; and

   b.  prohibiting DynaColor from using in any manner any confidential, proprietary and trade secret information of Razberi, including confidential information regarding Razberi's customers and products, including to solicit, switch and/or convert Razberi's customers;

   c.  prohibiting DynaColor from selling any of its A-series, M-Series, H-series and similar or derivative NVR products;

   d.  requiring that DynaColor provide a copy of such injunctive relief to all individuals and entities to whom DynaColor has sold any A-series, M-Series, H-series and similar or derivative NVR products; and

   e.  requiring that DynaColor seek from any reseller, distributor or other partner the return or destruction of all A-series, M-series, H-series and similar or derivative NVR products not yet sold to end customers.

75.     By reason of the foregoing conduct, Razberi has suffered great and irreparable injury. Unless DynaColor is enjoined from further breach of the Agreement, Razberi will suffer additional irreparable injury by the loss of customers, disclosure of confidential, proprietary and trade secret information, and loss of business reputation and will incur future economic loss which is incalculable.

76.     The threatened harm to Razberi is immediate.

77.     As set forth above and herein, Razberi has a probable right to the relief it seeks on final hearing.

78.     No damage to DynaColor and/or DynaColor USA will result from the requested injunctive relief.  DynaColor can continue as DynaColor and Razberi expected at the time of their agreements.

79.     Razberi has no adequate remedy at law, as the money damages for the future loss of its customers based on the conduct by DynaColor cannot be completely measured or calculated.  In addition, without immediate and permanent injunctive relief, continued use and disclosure by DynaColor of Razberi's trade secret and confidential information will cause the value of such trade secrets to be lost forever.

80.     Harm is imminent to Razberi because DynaColor is wrongfully using Razberi's confidential and trade secret information to improperly solicit Razberi's customers; and DynaColor is violating its obligations to Razberi to return the same; DynaColor is violating its obligation to Razberi not to use or disclose Razberi's confidential information. If Defendants are not stopped, the resulting damages to Razberi cannot be undone and would be irreparable. Because damage to Razberi from Defendants' conduct cannot be measured by any certain pecuniary standard, Razberi cannot be adequately compensated in damages if the information continues to be disclosed and/or used, or if Defendants are allowed to compete with Razberi in violation of their agreements.

81.     The threatened harm to Razberi is greater should injunctive relief not be ordered in that Defendants are, in violation of the terms of the Agreement, in possession of Razberi's confidential, proprietary and trade secret information.

82.     The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary and trade secret information and non-solicitation, are enforced.

83.     Accordingly, Razberi requests that this Court:

     a.   Issue a temporary restraining order requiring DynaColor to return to Razberi all confidential, proprietary and trade secret information belonging to Razberi that is within its possession;

     b.   Issue a preliminary injunction,

        i.   ordering DynaColor to return to Razberi all confidential, proprietary, and trade secret information of Razberi within their possession, custody, or control; and

        ii.   prohibiting DynaColor from using in any manner any confidential, proprietary and trade secret information of Razberi, including confidential information regarding Razberi's customers and products, including to solicit, switch and/or convert Razberi's customers;

        iii.   prohibiting DynaColor from selling any of its A-series, M-Series, H-series and similar or derivative NVR products;

        iv.   requiring that DynaColor provide a copy of such injunctive relief to all individuals and entities to whom DynaColor has sold any A-series, M-Series, H-series and similar or derivative NVR products; and

        v.   requiring that DynaColor seek from any reseller, distributor or other partner the return or destruction of all A-series, M-series, H-series and similar or derivative NVR products not yet sold to end customers.

     c.   Issue a permanent injunction enjoining and restraining DynaColor from the conduct set forth above in the paragraphs above. Alternatively, to the extent the Court finds that the restrictive covenant at issue contains limitations as to time, geographical area, or scope of activity that are not reasonable and/or impose a greater restraint than necessary, pursuant to Section 15.51(c) of the Texas Business and Commerce Code, Razberi requests that the Court reform the covenant to the extent necessary to cause the limitations contained therein to be reasonable; and

     d.   Award judgment in Razberi's favor and against DynaColor for an award for their costs expended herein, including reasonable attorney's fees, and for such other and further relief as is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Razberi pray that judgment be entered in their favor and against

Defendants as follows:

    1.     General damages according to proof;

    2.     Special damages according to proof;

3.      Consequential damages;

4.      For an equitable accounting, and disgorgement of any unjust enrichment;

5.      For injunctive relief as outlined above and determined by the Court;

6.      Punitive damages;

7.      Interest at the maximum legal rate on all sums awarded;

8.      Costs of suit, including reasonable attorneys' fees as provided for in the Agreement and at least under Texas Civil Practice and Remedies Code § 38.001; and

9.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Razberi demands a jury trial on all issues that may be determined by a jury.

Dated:  September 22, 2016               Respectfully submitted by,

*/s/ Marvin Craig Tyler*

Marvin Craig Tyler

Marvin Craig Tyler
Texas State Bar No. 00794762
ctyler@velaw.com
Janice L. Ta
Texas State Bar No. 24075138
jta@velaw.com
**VINSON & ELKINS LLP**
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
(512) 542-8440 phone
(512) 542-8612 fax

*Attorneys for Plaintiff*
*Razberi Technologies, Inc.*